## Case No. 7,054.

### The INVINCIBLE.

[2 Gall. 29; [1] 6 Hall, Law J. 1.]

Circuit Court, D. Massachusetts. May, 1814.[2]

Mr. Blake, for appellants.[4]

Mr. Dexter, for appellees.

[4] This was the first case argued after the reporter had assumed the office. He was not present at the opening by Mr. Blake, nor at the commencement of Mr. Dexter's argument.

Mr. Blake, for appellants.

Mr. Blake, in reply.

Before STORY, Circuit Justice, and DAVIS, District Judge.

STORY, Circuit Justice (after stating the facts). It is contended on the part of the protestants, that the prize courts of the United States have no cognizance of captures made by a foreign power, but that the right to decide upon the legality of captures belongs exclusively to the courts of the capturing power. On the other hand, it is contended by the counsel of Messrs. Hill and McCobb, that although the general principle be admitted, that the courts of the capturing power have jurisdiction as to the legality of all captures made under its authority; yet the principle applies only where the captured property is actually brought within the jurisdiction of the capturing power, so that prize proceedings may attach upon it. That the admiralty courts of every country have general jurisdiction in all cases

of torts committed on the high seas, wherever the person or thing, by which the tort is committed, is within the territory. That in the present case, the ship Mount-Hope never having been carried into France, the prize jurisdiction of its courts never attached, and therefore the present question, as to damages, could never attach, as an incident to the general jurisdiction of such courts. The general doctrine, that the trial of prizes belongs exclusively to the courts of that state, to which the captor belongs, is now too firmly settled to admit of doubt. In the great argument respecting the Silesia loan, it is laid down, in emphatic terms, that "this is the clear law of nations, and by this method prizes have always been determined in every other maritime country of Europe, as well as England." Coll. Jurid. 129. And this right attaches, not only when the captured property is brought within the territory of the capturing power, but also when it is brought within a neutral territory. The seizure as prize vests the possession in the sovereign of the captors, and subjects the property to the jurisdiction of his courts, and that possession is deemed firm and secure in a neutral port, and cannot be lawfully devested by a neutral tribunal. Bynk. Qu. Jur. Pub. cc. 15, 17 [Heinec. de Nav. ob Vect. Merc. Vet. Com. c. 2, § 9]; [5] Hudson v. Guestier, 4 Cranch [8 U. S.] 293; The Henrick and Maria, 4 C. Rob. Adm. 43. And it makes no difference whether the captured property, in such case, belong to an enemy or a neutral. Valin, Traite des Prises, c. 14, § 42; Duke of Newcastle's Letter, 1 Coll. Jurid. 129; U. S. v. Peters, 3 Dall. [3 U. S.] 121; Hudson v. Guestier, 4 Cranch [8 U. S.] 293. It would seem therefore to follow, as a necessary inference, that the courts of neutral nations were bound to abstain from the exercise of all jurisdiction over property captured as prize by a regularly commissioned foreign cruiser, and brought into their ports. But inasmuch as captures may have been made without a lawful commission, fraudulently or piratically, or in violation of the territorial rights of the country, into which the prize property is brought; for the purpose of inquiries of this kind, neutral courts may entertain jurisdiction, and in proper cases award restitution. It seems settled, that if a capture has been made within the territorial seas of a neutral country, or by a privateer illegally equipped in a neutral country, or by persons, who could not, without a violation of their allegiance to a neutral country, act under a belligerent commission, such capture is invalid, and the property, to whomsoever belonging, may be rightfully restored by the prize courts of such neutral country, when brought within its ports. Talbot v. Janson, 3 Dall. [3 U. S.] 133. And the principle, upon which such decisions are sustained, seems perfectly sound, and consist-

ent with the acknowledged rights of belligerent powers. A neutral nation is bound to abstain from every act of hostility, and to conduct itself with perfect impartiality. If it suffer its neutral arm to be used to aid one belligerent, and to oppress its own friends, it becomes a party to the war, and is justly responsible for every act of injustice or hostility, which flows from such conduct. It has a right therefore to protect its own sovereignty from violation, and to punish the offenders; and, as far as is in its power, to restore the parties injured by the illegal act to the same situation, in which they were before it was committed.

So far then, as the sovereignty and rights of neutral nations are concerned, they form an exception to the general doctrine, as to the exclusive jurisdiction of the courts of the capturing power over prizes. The exception seems indeed to have been pressed somewhat farther in some decisions in our own country; farther indeed than in my humble judgment, and I speak with the utmost deference, can be easily reconciled with general principles. It seems to have been held, that whenever neutral or American property is captured on the high seas by a lawfully commissioned ship of a foreign belligerent, and brought into our ports, the courts of the United States have jurisdiction to inquire into the merits of the capture, and, if in their judgment the captors are not entitled to condemnation, to award restitution, notwithstanding even a probable cause for the capture. Glass v. The Betsy, 3 Dall. [3 U. S.] 6; Del Col v. Arnold, Id. 333. In time of war it is an unquestionable right of the belligerents to search neutral ships and cargoes upon the ocean, and, in cases of suspicion, to send them in for adjudication. The evidence to acquit or condemn comes in the first instance from the ship's papers, and the persons on board. If a breach of neutrality or fraud, or gross misconduct appear, the courts of prize are competent in such cases to decree confiscation of the property by way of penalty. If therefore a neutral tribunal shall undertake to try these questions, which regularly belong to the courts of the belligerent, there is certainly some danger, that the case will not always be tried by the same proceedings and rules, which ordinarily govern in prize causes. In cases of capture of enemy's property, strictly so called, under like circumstances, the exercise of such a jurisdiction would be utterly inconsistent with the admitted exclusive rights of the captors, for no neutral country can interpose to wrest from a belligerent prizes lawfully taken (1 C. Rob. Adm. 65); and as all neutral property, when captured, is, if condemned, deemed quasi enemies' property, the neutral tribunal does in fact undertake to decide on the title to the captured property, and settle its hostile or innocent character. If the property turn out to be hostile, it will not undertake to condemn it, for that would be

---

[5] [From 6 Hall, Law J. 1.]

a voluntary interposition in the war; if neutral, it seems difficult to perceive. how it can rightfully settle the question how far its character of neutrality has been compromitted, or injuriously used against the belligerents.

It is true, that by the ordinance of Louis XIV. (Des Prises, art. 15) it is expressly declared, that if, on board of prizes brought into French ports by foreign armed vessels, there shall be found goods belonging to the subjects of France, or its allies, the goods so belonging to French subjects shall be restored. Valin says, that this right is exercised in favor of subjects by way of compensation for the asylum granted to the captor and his prize; but he expressly states, that the rule does not extend to the goods of allies. 2 Valin, Comm. 274; Valin, Des Prises, c. 7, p. 106. At best this is but a mere municipal regulation of France, and in countries, where no similar regulation exists, it should seem fit, that the general rule of the law of nations should prevail. The true principle seems laid down by Mr. Justice Johnson in his very able opinion in Rose v. Himely [Case No. 12,046]. "A prize, brought into our ports by a belligerent, continues subject to the jurisdiction of the capturing power, although the corpus be within the limits of another jurisdiction. A prize, brought into our ports. would be in no wise subjected by that circumstance to our jurisdiction, except perhaps in the single case of its being necessary to assume the jurisdiction, to protect our neutrality or sovereignty, as in the case of captures within our jurisdictional limits, or by vessels fitted out in our ports." In The Flad Oyen, 1 C. Rob. Adm. 134, 144, Sir William Scott asserts the same doctrine, and declares, that prize of war is a matter "over which a neutral country has no cognizance whatsoever. except in the single case of an infringement of its own territory." The doctrine. which seems asserted in the cases of Glass v. The Betsy, and Del Col v. Arnold, so far as applies to the present discussion, is encountered also. and in no small degree shaken. by the opinion of the supreme court in Hudson v. Guestier, 4 Cranch [8 U. S.] 293, 6 Cranch [10 U. S.] 281. The chief justice, in delivering the opinion of the court, speaking of a vessel captured as prize. says. "in the port of a neutral, she is in a place of safety, and the possession of the captor cannot be lawfully devested, because the neutral sovereign, by himself or his courts, can take no cognizance of the question of prize or no prize. In such case, the neutral sovereign cannot wrest from the possession of the captor a prize of war brought into his ports." And applying the same reasoning to the case of a seizure for the violation of a municipal law,' he declares it to be the opinion of the court. "that a possession, thus lawfully acquired under the authority of a sovereign state, could not be devested by the tribunals of that country, into whose ports the captur-

ed vessel was brought." It will be recollected, that in this case the property belonged to American citizens, and had been condemned, while lying in a Spanish port, by a French tribunal, and afterwards brought to this country. But in Rose v. Himely, 4 Cranch [8 U. S.] 241, which was argued at the same time, and involved in many respects the same questions as Hudson v. Guestier [supra], the property was actually brought into the United States, and libelled for restitution, before any proceedings were instituted in any French tribunal. The doctrine therefore in Hudson v. Guestier must be supposed to apply to the case of American, as well as neutral, property, captured and brought into an American port. In either respect it would be inconsistent with that, which seems to be assumed in the cases in 3 Dall. [3 U. S.] 6, 333, to which I have alluded. But allowing these cases to have the fullest effect, which the most liberal construction can impute to them, they only decide. that the jurisdiction of our courts, in matters of prizes made by foreign cruisers, attaches, whenever the prize property is within our own ports. In the case before the court, the cruiser itself only is within the country, and not the captured ship in the character of prize. It is therefore clearly distinguishable. The cruiser too comes into port by compulsion in the hands of American recaptors, succeeding to hostile captors. It is not therefore a case, where even a voluntary asylum is sought.

I accede to the position, that, in general, in cases of maritime torts, a court of admiralty will sustain jurisdiction, where either the person, or his property, is within the territory. It is not even confined to the mere offending thing; it spreads its arms over the tangible. as well as incorporeal property of the offending party, to enable it to afford an adequate remedy. The admiralty may therefore arrest the person, or the property. or. by a foreign attachment, the choses in action, of the offending party, to answer ex delicto. But it affords such remedies only. where the tort is a mere marine trespass. and not where it involves directly the question of prize. No case has been produced at the argument, where a neutral tribunal has sustained jurisdiction over a cruiser on account of her having made illegal prizes on the high seas, where the prize was not within its territory. After considerable research. I have not been able to find any such case in modern times. From the works of Sir Leoline Jenkins (volume 2, pp. 714–754) it does however appear, that in 1675, the English admiralty confiscated a French privateer on account of illegal depredations committed on English and Dutch vessels, against the remonstrances of the French government. who claimed a renvoy of the cause. as rightfully belonging to them. But the particular ground of the decision does not appear; and as one charge was for

an infringement of the territorial sovereignty of Great Britain, it might have turned upon that point. 2 Wood, Inst. Eng. Law, 425. On the other hand, in the case of U. S. v. Peters, 3 Dall. [3 U. S.] 121, the supreme court awarded a prohibition to the district court against proceeding on a libel against a French national ship of war for an alleged illegal capture of an American schooner and cargo, the prize having been carried into a French port for adjudication. And the prohibition asserted, that by the law of nations belligerent cruisers duly commissioned had a right, in time of war, to arrest and seize neutral ships, and carry them into the ports of their sovereign for adjudication, and that such cruisers, or their officers and crew, were not amenable before the tribunals of neutral powers for their conduct therein.

It is argued, that this case is inapplicable to that at bar, because the Mount-Hope was recaptured, and thereby the right of the French captors devested, and their courts ousted of jurisdiction. And it is certainly law, that in case of a recapture, escape or voluntary discharge, of a captured vessel, the right of the courts of the belligerent to adjudicate upon the property, as prize, is completely gone; for that right remains, only while the possession of the property remains, either actually or constructively, in the sovereign of the captors. But it does not thence follow, that such courts are deprived of the authority to award damages to the injured party, where the capture has been unlawful, and thereby indirectly to entertain the question of prize. Much less is it to be inferred, that the fact of recapture alone enables a neutral tribunal to take cognizance of the capture itself, and thereby of the question of prize, over which originally it could not assert any jurisdiction. In the first place, it is extremely clear, that the French courts had complete authority, as courts of prize, to award damages for the capture of the Mount-Hope, if it was illegal. The ordinary mode of seeking redress by neutrals for such injuries is, to apply to the prize tribunals of the sovereign, under whose authority the capture has been made, for damages. Such cases are familiar in the annals of the admiralty. The Betsy, 1 C. Rob. Adm. 93. The argument therefore of the counsel for Messrs. Hill and McCobb, that if this court have not jurisdiction to award damages, no court has, and there is a right without a remedy, cannot be sustained. In the next place, the principal question, involved in a trial under such circumstances, necessarily is the question of prize. It is true, that probable cause would justify the seizure, and destroy the claim for damages; but it must be probable cause to seize as prize in reference to a violation of belligerent rights. What constitutes such probable cause depends on the state of the war, the actual operations of the belligerents, the documents required to be on board, the arti-

ficial rules applied by prize tribunals, to sift the colorable papers and commerce of neutrals, and the positive directions of the sovereign power. Of some of these questions, at least, the courts of the captors are the most competent judges. Suppose an American ship had been captured under the British orders in council for having a certificate of origin on board, would it have been competent for an American tribunal, if the cruiser had come within our ports, to decide upon the legality of the capture thus made under the orders of the sovereign, who had already declared such certificates to be a good cause of condemnation?—It seems to me difficult to maintain, that such a capture, so made, could, in an American court, subject the party to damages, even supposing it be a clear infringement of our neutral rights, and of the laws of nations. The acts done under the authority of one sovereign can never be subject to the revision of the tribunals of another sovereign; and the parties to such acts are not responsible therefor in their private capacities. If the citizens of a neutral country are injured by such acts, it belongs to their own government to apply for redress, and not for judicial tribunals to administer it. One great object in the establishment of prize courts is to ascertain, whether a capture is made under the authority of the sovereign power. When once the courts of any sovereign have definitely pronounced the capture rightful, it becomes the acknowledged act of the sovereign himself, and the parties, who made the capture, are completely, as to all foreign nations, justified, however repugnant such capture may seem to the law of nations. How can a neutral tribunal decide, that a capture on the high seas is in opposition to the will of the sovereign of the captors?— It may perhaps be competent to decide, that the capture ought not to have been ratified, but could it hence infer, that it would not be? Whether damages then shall in any case of capture be given, must depend upon the law of prize, as understood and administered by the foreign sovereign, or in a case of probable cause, upon the subsequent conduct of the captors. The damages therefore are not an independent and principal inquiry, but a regular incident to the question of prize, in whatever manner the process may be instituted. And this consideration disposes of that part of the argument, in which it is assumed, that although a neutral tribunal may not directly entertain the question of prize, yet it may collaterally, when it is a mere incident to the question of damages.

On the whole I am of opinion, that in the case before the court, the prize tribunals of France had complete jurisdiction by the capture; that, although the right to adjudicate as prize was devested by the subsequent British recapture, yet it was still competent for them to entertain a suit by the owners.

for damages. if the capture were illegal; that, consistently with the law of nations, an American tribunal could not adjudge on the question of prize; and the recapture of the prize, or the bringing the cruiser within our ports, did not vest a jurisdiction in such tribunal, which it was otherwise incapable of assuming. I am therefore for sustaining the plea to the jurisdiction. and for dismissing the claim of Messrs. Hill and McCobb with costs. Claims dismissed with costs.