**AMSTAR CORPORATION (a Delaware Corporation), Appellee,**

v.

**S/S ALEXANDROS T., her engines, boilers, tackle, appurtenances and apparel, etc.; Nava Shipping Co., Ltd. (a foreign corporation), Appellants.**

**No. 79–1493.**

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1981.

Decided Nov. 10, 1981.

Kieron F. Quinn, Baltimore, Md. (M. Hamilton Whitman, Jr., Ober, Grimes & Shriver, Baltimore, Md., on brief), for appellants.

Donald A. Krach, Baltimore Md., George F. Chandler, III, New York City (Robert P. O'Brien, Niles, Barton & Wilmer, Baltimore, Md., on brief), for appellee.

David R. Owen, Baltimore, Md., David J. Sharpe, George Washington University Law School, Washington, D.C. (John W. Sims, New Orleans, La., Gordon W. Paulsen, New York City, Graydon S. Staring, San Francisco, Cal., on brief), for The Maritime Law Association of the United States, amicus curiae.

Before BUTZNER, and PHILLIPS, Circuit Judges, and W. EARL BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.

BUTZNER, Circuit Judge:

Rule C for Certain Admiralty and Maritime Claims, as implemented by rule E, provides, among other things, for the arrest of a vessel in an *in rem* action to enforce a maritime lien. Upon the filing of a complaint and the clerk's issuance of a warrant, the marshal is authorized to take custody of the vessel.[1] The primary question raised in

---

1. The Supplemental Rules are a part of the Federal Rules of Civil Procedure. Extracts from rule C are quoted in note 7, *infra*.

this appeal is whether the district court erred by holding that rule C is constitutional. The second issue is whether the district court properly assessed damages for cargo loss. Finding no error of law or fact, we affirm the judgment of the district court.[2]

## I

At the outset, we reject the suggestion that the district court's judgment must be affirmed because inferior courts lack the power to adjudicate the constitutionality of rules promulgated by the Supreme Court. Of course, inferior courts are required to adhere to the Court's decisions. Rule making, however, is a legislative or administrative function rather than an act of adjudication.[3] Indeed, the Supreme Court has stated: "The fact that this Court promulgated the [Federal Rules of Civil Procedure] as formulated and recommended by the Advisory Committee does not foreclose consideration of their validity, meaning or consistency."[4] The duty to consider a rule's validity is not limited to the Supreme Court. A district court can refuse to apply a rule when it concludes that "the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions."[5] The district court, therefore, did not err when it adjudicated the challenge to the rules' constitutionality.

## II

Amstar Corporation, alleging cargo damage, brought this action in admiralty against the vessel ALEXANDROS T., *in rem* and against its owner, Nava Shipping Co., Ltd., of Nicosia, Cyprus, *in personam.* Pursuant to rule C, the marshal arrested the ship in the *in rem* proceeding. Pursuant to rule B, he attached it in the *in personam* proceeding. Protesting that rules B and C are unconstitutional, the ALEXANDROS T. and Nava, appeared specially and moved to dismiss the complaint for lack of jurisdiction. Before the court heard this motion, the parties agreed that the vessel should be released from custody in consideration of a letter of undertaking from Nava's insurance carrier. Subsequently, the district court upheld the constitutionality of the rules, denied the motion to dismiss, and after trial awarded Amstar damages in the amount of $150,882.06 against both appellants.

Nava contends that the court did not obtain either personal or subject matter jurisdiction because (1) rules B, C, and E are facially unconstitutional, (2) they were unconstitutionally applied, and (3) Amstar did not comply with them. Relying on cases that dealt with the constitutionality of state laws governing the seizure of a debtor's property before judgment,[6] Nava asserts that the rules deprived it of the use of its vessel without due process of law in violation of the fifth amendment. On appeal Nava emphasizes its claim that the

---

2. The district court's opinions are reported in 431 F.Supp. 328 (D.Md.1977) (constitutionality of Supplemental Rules) and 472 F.Supp. 1289 (D.Md.1979) (damages).

3. *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 731, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980).

4. *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444, 66 S.Ct. 242, 245, 90 L.Ed. 185 (1946).

   Individual justices have expressed similar views. *See* Order Amending Federal Rules of Civil Procedure, 446 U.S. 997 n.1 (1980) (Powell, Stewart, Rehnquist, JJ., dissenting); Order Adopting and Amending Federal Rules of Evidence, 409 U.S. 1132, 1133 (1973) (Douglas, J., dissenting); Order Amending

Federal Rules of Civil Procedure, 383 U.S. 1031, 1032 (1966) (Black, J., dissenting); Order Amending Federal Rules of Civil Procedure, 374 U.S. 865, 870 (1963) (Black and Douglas, JJ., dissenting).

5. *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965).

6. *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).

rules are facially unconstitutional, particularly complaining that the district court did not address this issue.

For reasons adequately stated by the district court in its opinion, we hold that the rules, if facially constitutional, were constitutionally applied and that Amstar complied with them in the institution and prosecution of its action. Consequently, we will discuss only Nava's claim that the rules are facially unconstitutional. Moreover, if rule C is constitutional, the district court was empowered to grant Amstar full relief in the *in rem* proceeding. Therefore, we need not examine the constitutionality of rule B or the question of *in personam* jurisdiction over Nava. Mindful that a judgment on a constitutional issue should not be unnecessarily broad, we will confine our decision to the constitutionality of the provisions of rule C, as implemented by rule E, dealing with *in rem* proceedings against a vessel.[7]

The catalog of the constitutional defects that Nava perceives in rule C is drawn from the deficiencies exposed in *Sniadach v. Family Finance Corp.* and related cases.[8] It includes the following: no court order is required for the arrest of a vessel; the clerk has no discretion to refuse to issue process if the complaint is in proper form and the necessary fees are tendered; the marshal also lacks discretion to refuse to execute process; no provision is made for either a pre-arrest or post-arrest hearing; notice need not be given for 10 days and then only by publication; no bond is required for the arrest of the vessel; the owner, however, must give bond or procure consent for its release before liability is adjudicated; if security is not furnished, the vessel may be sold prior to trial.[9]

### III

We have little doubt that rule C would be invalid if its constitutionality were to be measured solely by the principles explained in *Sniadach* and the other cases on which

---

**7.** Rule C states in part:

(1) *When Available.* An action in rem may be brought:

(a) To enforce any maritime lien;

(b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.

Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable.

. . . .

(2) *Complaint.* In actions in rem the complaint shall be verified on oath or solemn affirmation. It shall describe with reasonable particularity the property that is the subject of the action and state that it is within the district or will be during the pendency of the action. . . .

(3) *Process.* Upon the filing of the complaint the clerk shall forthwith issue a warrant for the arrest of the vessel or other property that is the subject of the action and deliver it to the marshal for service. . . .

(4) *Notice.* No notice other than the execution of the process is required when the property that is the subject of the action has been released in accordance with Rule E(5). If the property is not released within 10 days after execution of process, the plaintiff shall promptly or within such time as may be allowed by the court cause public notice of the action and arrest to be given in a newspaper of general circulation in the district, designated by order of the court. . . .

. . . .

(6) *Claim and Answer; Interrogatories.* The claimant of property that is the subject of an action in rem shall file his claim within 10 days after process has been executed or within such additional time as may be allowed by the court, and shall serve his answer within 20 days after the filing of the claim. . . .

Rule E contains general provisions relating to appearances, complaints, process, security, counterclaims, and the custody, release, and sale of property.

**8.** *See* note 6, *supra.*

**9.** Nava claims only that it was denied procedural due process. It does not contend that the district of Maryland is an unconstitutional forum. For the distinction between the requirements of the due process clause governing procedures and those governing forums, *compare Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (procedure), *with Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (forum). *See also Grand Bahama Petroleum Co., Ltd. v. Canadian Transportation Agencies, Ltd.,* 450 F.Supp. 447, 451–56 (W.D.Wash.1978); Batiza and Partridge, *The Constitutional Challenge to Maritime Seizures,* 26 Loy.L.Rev. 203 (1980).

Nava relies.[10] Our first inquiry, therefore, is whether *Sniadach* and other cases involving common law procedures apply to rule C.

Congress and the Court have always recognized that maritime law differed from the common law. In the Act that granted the Supreme Court its authority to promulgate procedural rules, Congress provided: "[T]he forms of writs, executions and other process . . . [in suits of] . . . admiralty and maritime jurisdiction, [shall be] according to the principles, rules and usages which belong to courts . . . of admiralty . . . as contradistinguished from courts of common law . . . ."[11] Although rule C was promulgated in its present form in 1966,[12] its provisions for the arrest of a vessel in an *in rem* action can be traced through the Admiralty Rules of 1920[13] and 1844[14] with little

change.[15] This procedure, moreover, was used long before it was embodied in the rule.[16] Its purpose has always been to provide a means for enforcing a maritime lien, which is the central element of an *in rem* proceeding.[17] Maritime liens, however, are not created by the rule. They are an integral aspect of substantive, rather than procedural, maritime law.[18]

A maritime lien is an essential predicate for the arrest of a vessel in a private *in rem* action. Maritime law, with exceptions not pertinent to this case, gives a maritime lien to the owner of cargo that has been damaged aboard a vessel.[19] Quite different from a common law lien, a maritime lien is not simply a security device to be foreclosed if the owner defaults. The vessel itself is viewed as the obligor whether or not the

---

10. Several courts have examined rules B and C in light of *Sniadach* and its progeny and found them to be constitutionally deficient. *See, e. g., Grand Bahama Petroleum Co., Ltd. v. Canadian Transportation Agencies, Ltd.*, 450 F.Supp. 447 (W.D.Wash.1978) (invalidating rule B); *Karl Senner, Inc. v. M/V ACADIAN VALOR*, 485 F.Supp. 287 (E.D.La.1980) (rule C); *Alyeska Pipeline Service Co. v. BAY RIDGE*, 509 F.Supp. 1115 (D.Alaska 1981) (rule C); *Cook Industries, Inc. v. Tokyo Marine Co., Ltd.*, 1978 A.M.C. 1979, 1982–84 (D.Alaska 1978) (rule B); *see also Techem Chemical Co. v. M/T CHOYO MARU*, 416 F.Supp. 960, 969–70 (D.Md.1976) (dicta; rules B, C, and E); *P.C. International, Inc. v. Vessel SUSAN*, 1980 A.M.C. 2062, 2063–68 (S.D.Fla.1980) (dicta; rule C).

   Other courts have upheld the rules. *See, e. g., United States v. KAIYO MARU No. 53*, 503 F.Supp. 1075, 1087–88 (D. Alaska 1980) (rule C, forfeiture); *Merchants National Bank v. Dredge GENERAL G. L. GILLESPIE*, 488 F.Supp. 1302, 1303–05 (W.D.La.1980), *appeal docketed*, No. 80–3349 (5th Cir. May 2, 1980) (rule C); *Sideris Shipping Co., Inc. v. M/V CARIBBEAN ARROW*, 1980 A.M.C. 1296, 1297–98 (M.D.Fla.1979) (rule C); *A/S Hjalmer Bjorges Rederi v. Tug Boat CONDOR*, 1979 A.M.C. 1696, 1701–02 (S.D.Cal.1979) (rule C); *Stoner v. O/S NEISKA II*, 1978 A.M.C. 2650, 2651 (D. Alaska 1978) (rule C); *Engineering Equipment Co. v. S.S. SELENE*, 446 F.Supp. 706, 709–10 (S.D.N.Y.1978) (rule B); *Amoco Overseas Oil Co. v. Compagnie Na'ionale Algerienne de Navigation*, 459 F.Supp. 1242, 1248–49 (S.D.N.Y.1978), *aff'd*, 605 F.2d 648, 654–55 (2d Cir. 1979) (rule B); *Central Soya Co., Inc. v. Cox Towing Corp.*, 417 F.Supp. 658,

662–65 (N.D.Miss.1976) (rules C and E); *Bethlehem Steel Corp. v. S/T VALIANT KING*, 1977 A.M.C. 1719, 1721–26 (E.D.Pa.1974) (rule C).

11. Act of May 8, 1792, ch. 36, § 2, 1 Stat. 275, 276.

12. *See* Order Amending Federal Rules of Civil Procedure, 383 U.S. 1031 (1966).

13. *See* Order Adopting and Promulgating United States Admiralty Rules, 254 U.S. 673 (1920).

14. *See* Order Adopting and Promulgating Rules of Practice for the Courts of Admiralty, 44 U.S. (3 How.) ix (1845).

15. *See* 7A Moore's Federal Practice §§ .01–.02, .20–.21 (2d ed. 1979); Currie, *Unification of the Civil and Admiralty Rules: Why and How*, 17 Maine L.Rev. 1 (1965).

16. *See, e. g., The NESTOR*, 18 F.Cas. 9 (C.C.D. Maine 1831) (Story, J.); *The INVINCIBLE*, 13 F.Cas. 72, 76 (C.C.D.Mass.1814) (Story, J.), *aff'd*, 14 U.S. (1 Wheat.) 238, 4 L.Ed. 80 (1816).

17. For a lucid explanation of admiralty *in rem* practice and procedure, *see* McCreary, *Going for the Jugular Vein: Arrests and Attachments in Admiralty*, 28 Ohio St.L.J. 19 (1967).

18. *Saylor v. Taylor*, 77 F. 476, 479–80 (4th Cir. 1896).

19. *Krauss Bros. Lumber Co. v. Dimon S.S. Corp.*, 290 U.S. 117, 121–22, 54 S.Ct. 105, 106, 78 L.Ed. 216 (1933).

owner is also obligated.[20] Substantive maritime law confers on the holder of a maritime lien a sufficient interest in the vessel to detain it for security and ultimately to subject it to condemnation and sale for satisfaction of the lien.[21] The arrest of the vessel in the proceeding *in rem* is to accomplish this end. "The lien and the proceeding *in rem* are, therefore, correlative— where one exists, the other can be taken, and not otherwise."[22]

These principles were developed to meet the special needs of persons engaged in many aspects of maritime commerce.[23] By enforcing maritime liens through the arrest of vessels in *in rem* proceedings, admiralty enables people engaged in maritime commerce to obtain redress for certain kinds of injuries caused by the vessel and its crew without seeking compensation abroad from the vessel's owner. The owner, moreover, is not exposed to unlimited liability.[24]

*Sniadach* and other cases invalidating state garnishment, attachment, and replevin statutes dealt exclusively with common law concepts rather than the unique concerns of maritime law. Neither in these cases nor in a closely related case upholding a sequestration statute based on civil law,[25] did the Court advert to maritime law and practice. The omission is significant. The Court relied on precedents from many areas of the common law,[26] but it found no occasion to refer to its decisions, written over a period of nearly two centuries, involving admiralty suits *in rem*. We, too, must give effect to the significant differences between the common law and admiralty. The constitutionality of rule C must be determined in the light of the nautical background from which it evolved and with due regard to the substantive maritime law it serves.[27] Constitutional principles governing creditors' rights at common law cannot be applied mechanically to test the validity of rule C. Therefore, we cannot accept Nava's argument that *Sniadach* and related cases provide controlling precedent for this appeal.

Also, we cannot accept Amstar's argument that forfeiture cases, including some prosecuted in accordance with rule C, provide controlling precedent for upholding the rule's constitutionality.[28] These cases dealt with the right of the sovereign to vindicate its penal laws. Consequently, the interests at stake were quite different from the private interests presented in this appeal.[29]

Furthermore, we are not persuaded by Amstar that the Court's approval of state *quasi in rem* actions to obtain jurisdiction over the property of non-resident defendants provides controlling precedent for up-

**20.** *The CHINA*, 74 U.S. (7 Wall.) 53, 19 L.Ed. 67 (1869); *The NESTOR*, 18 F.Cas. 9 (C.C.D. Maine 1831) (Story, J.).

**21.** *See The JOHN G. STEVENS*, 170 U.S. 113, 115–23, 18 S.Ct. 544, 545–58, 42 L.Ed. 969 (1898); 2 Benedict on Admiralty § 22 (7th ed. 1975).

**22.** *The Rock Island Bridge*, 73 U.S. (6 Wall.) 213, 215, 18 L.Ed. 753 (1867).

**23.** A cargo lien is but one kind of maritime lien. Among others are seamen's claims for wages, salvage, collision, supplies, repairs, towage, wharfage, pilotage, stevedoring, and charterparties. *See* Gilmore and Black, The Law of Admiralty 622–33 (2d ed. 1975).

**24.** *M. W. Zack Metal Co. v. International Navigation Corp.*, 510 F.2d 451 (4th Cir. 1975); *see also* rule E(8).

**25.** *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).

**26.** *See Fuentes v. Shevin*, 407 U.S. 67, 90–93, 92 S.Ct. 1983, 1993–2000, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, 23 L.Ed.2d 349 (1969).

**27.** *See Hagar v. Reclamation District No. 108*, 111 U.S. 701, 708, 4 S.Ct. 663, 667, 28 L.Ed. 569 (1884).

**28.** *See, e. g., Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (rule C); *United States v. Articles of Hazardous Substance*, 588 F.2d 39 (4th Cir. 1978) (rule C).

**29.** *See* Gilmore and Black, The Law of Admiralty 593 (2d ed. 1975).

holding rule C.[30]  These cases require an evaluation of the contacts the non-resident has with the forum.  They do not respond to Nava's complaint of inadequate procedural safeguards.[31]

The Court has explained the nature of due process in countless cases, and two quotations will serve to illustrate the general principles that guide our inquiry.  In *Cafeteria & Restaurant Workers Union v. McElroy*,[32] Justice Stewart wrote:

> The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. . . .  " '[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."

Justice Frankfurter wrote in *Joint Anti-Fascist Refugee Committee v. McGrath* : [33]

> "[D]ue process" is compounded of history, reason, [and] the past course of decisions, . . .  Due process is not a mechanical instrument.  It is not a yardstick.  It is a process.  It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution. entrusted with the unfolding of the process.
>
> . . . .
>
> . . . The Court has responded to the infinite variety and perplexity of the tasks of government by recognizing that what is unfair in one situation may be fair in another.

We believe that the Court's analysis of the due process clause sustains our conclusion that the constitutionality of rule C is not governed by criteria derived from cases dealing with common law attachments and garnishments or penal forfeitures.

## IV

■ The fundamental requisites of due process are adequate notice and the opportunity to be heard.[34]  These, it is true, are the minimum requirements.  Nevertheless, if they are satisfied, we believe that the constitutionality of rule C must be sustained.  Conforming the rule to some or all of the requirements of the cases dealing with the constitutionality of common law seizures may be a salutary reform.  But these changes, we believe, are the prerogative of the rule maker.  They are not constitutionally required.

■ *Mullane v. Central Hanover Bank & Trust Co.*[35] states the following criteria for determining whether notice satisfies the due process clause:

> The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance, . . .  But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional require-

**30.**  *See Fuentes v. Shevin*, 407 U.S. 67, 91 n.23, 92 S.Ct. 1983, 1999 n.23, 32 L.Ed.2d 556 (1972) (citing *Ownbey v. Morgan*, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921)).  *But see Shaffer v. Heitner*, 433 U.S. 186, 194 n.10, 211–12, 97 S.Ct. 2569, 2574 n.10, 2583–84, 53 L.Ed.2d 683 (1977).

**31.**  *See Shaffer v. Heitner*, 433 U.S. 186, 189, 97 S.Ct. 2569, 2572, 53 L.Ed.2d 683 (1977).

**32.**  367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).

**33.**  341 U.S. 123, 162–63, 71 S.Ct. 624, 643–64, 95 L.Ed. 817 (1951) (concurring).

**34.**  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–16, 70 S.Ct. 652, 656–58, 94 L.Ed. 865 (1950).

In *Hagar v. Reclamation District No. 108*, 111 U.S. 701, 708, 4 S.Ct. 663, 667, 28 L.Ed. 569 (1884), the Court defined "due process" as follows:

> [B]y "due process" is meant one which, following the forms of law, is appropriate to the case, and just to the parties to be affected.  It must be pursued in the ordinary mode prescribed by the law;  it must be adapted to the end to be attained;  and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought.

**35.**  339 U.S. 306, 314–15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

ments are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals."
. . .

But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, . . . or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

To apply these criteria, we need not take refuge in the fiction that the vessel is assumed to be a person. The personification of the vessel, long accepted in admiralty,[36] should not blind a court to reality. The arrest of the vessel has an important economic effect on the owner. It is the owner, therefore, who is entitled to adequate notice. A second reality cannot be overlooked. The master immediately is made aware of the arrest of the vessel. In fact, it is difficult to conceive of a more forceful way to apprize him of the commencement of the in rem proceeding. The master is the owner's representative, and it is reasonable to believe that the master will promptly communicate with his employer or his employer's insurance carrier. Indeed, as Justice Jackson observed in Mullane : "The ways of an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights. Hence, libel of a ship, . . . may reasonably be expected to come promptly to the owner's attention."[37] Justice Jackson's observation was confirmed by the Advisory Committee which explained that notice by publication was not routinely required by rule C because the vessel was usually released.[38] We therefore conclude that execution of process as provided by rule C gives the owner, through the master, adequate notice to enable him to defend the ultimate enforcement of the lien in the in rem proceeding.[39]

The question remains whether the rule is unconstitutional because notice is not required before the vessel is arrested and the owner is deprived of its use, even temporarily. The answer to this question is found in the substantive law of admiralty which gives a maritime lienor sufficient interest in the vessel to detain it so his lien can be judicially enforced. Notice prior to arrest would in many instances enable the owner to frustrate judicial enforcement of the lien by simply ordering the master to put out to sea. Thus, execution of the process by arrest of the vessel is adapted to attain the end sought by maritime law as well as to

---

**36.** In *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 23, 80 S.Ct. 1470, 1473, 4 L.Ed.2d 1540 (1960), Justice Black observed that although this fiction has been criticized, it serves the useful purpose of allowing an *in rem* action against the ship when the owner cannot be found.

**37.** 339 U.S. at 316, 70 S.Ct. at 658.

**38.** Notes of Advisory Committee rule C(4):
    This carries forward the notice provision of Admiralty Rule 10, with one modification. Notice by publication is too expensive and ineffective a formality to be routinely required. When, as usually happens, the vessel or other property is released on bond or otherwise there is no point in publishing no-

tice; the vessel is freed from the claim of the plaintiff and no other interest in the vessel can be affected by the proceedings. If, however, the vessel is not released, general notice is required in order that all persons, including unknown claimants, may appear and be heard, and in order that the judgment in rem shall be binding on all the world.

**39.** In a related context Congress has recognized that service of process on the master is adequate notice to the shipowner. *See* 28 U.S.C. § 1605(b) (Foreign Sovereign Immunities Act of 1976); *see also* Simmons, *Admiralty Practice Under the Foreign Sovereign Immunities Act—A Trap for the Unwary*, 12 J.Mar.L. & Com. 109, 118 (1980).

provide actual notice to the owner. For these reasons, the notice provided by rule C satisfies the due process clause.

The second fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."[40] Rule C provides the shipowner an opportunity to be heard before a maritime lien is ultimately enforced by sale of the vessel. In this respect it is constitutional. The remaining constitutional issues are whether a pre-arrest hearing is required, and, if not, whether the provisions of the rule for a post-arrest hearing are constitutional.

We hold that a pre-arrest hearing need not be afforded the shipowner for the same reasons that led us to conclude that he was not constitutionally entitled to pre-arrest notice. If the vessel were free to depart from the port pending a pre-arrest hearing, the lienor's right to the enforcement of his maritime lien could be defeated.

Rule E(5) authorizes the marshal or the clerk, without the intervention of the court, to release the vessel forthwith when the parties stipulate to its release or the owner posts approved security. If the parties cannot agree on the amount of the bond, the rule provides that the court shall fix it. In these respects, the rule affords the shipowner an adequate opportunity to be heard when the only question is the sufficiency of the security the owner must furnish.

■ A shipowner challenging the validity of an arrest is constitutionally entitled to a prompt post-arrest hearing in which the plaintiff has the burden of showing probable cause for the arrest.[41] Although rule C does not expressly provide for such a hearing, the rule must be read in conjunction with rule 12 of the Rules of Civil Procedure, which by the terms of rule 1 and rule A is made applicable to suits in admiralty. Rule 12(b) accommodates a challenge to the validity of the arrest and consequently to the jurisdiction of the court in the in rem proceeding. The burden of establishing jurisdiction is, of course, on the plaintiff.[42] To establish a sufficient interest in the vessel to justify its arrest, he must prove prima facie entitlement to a maritime lien. Rule 12(d) provides for determination of a rule 12(b) motion before trial. Denial of a shipowner's request for a prompt hearing on his motion to release the vessel would demonstrate that rule C was unconstitutionally applied.[43] It would not, however, establish that the rule was unconstitutional on its face.

In summary, rule C, as implemented by rule E and rule 12, gives the shipowner adequate notice of the arrest of the vessel and affords him an opportunity to be heard promptly concerning release of the vessel. The rule also provides adequate notice and hearing for adjudication of the in rem action. Considering rule C in the light of the substantive maritime law which it implements, we conclude that it satisfies the minimum requirements of the due process clause.

## V

Though conceding liability, Nava assigns error to the district court's assessment of Amstar's damages. The cargo was 4,000 long tons of raw sugar which was transported from Nicaragua to Baltimore by the ALEXANDROS T. En route the ship encountered heavy seas and took on water through rusty hatch covers. On viewing the cargo, representatives of Amstar and

---

**40.** *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

**41.** *See Armstrong v. Manzo*, 380 U.S. at 550–52, 85 S.Ct. at 1190–1191.

**42.** *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 188–89, 56 S.Ct. 780, 784–85, 80 L.Ed. 1135 (1936).

**43.** We accept the district court's finding that the shipowner was afforded an opportunity to be heard promptly on its rule 12 motion challenging the arrest. *See* 431 F.Supp. at 333–34.

the seller estimated that 50–60% of the sugar was wet. Instead of relying on an automatic sampling device, they agreed that hand samples of the sugar would serve as the basis for determining the selling price. Amstar paid for the entire shipment on the basis of the current price for dry sugar of the quality disclosed by the hand samples. It based its loss on the difference between the sale price and the current price of sugar of the quality disclosed by the wet samples. After hearing conflicting evidence concerning the extent of the damage and the proper method of measuring Amstar's loss, the district court set forth detailed findings of fact and fully discussed the applicable law.[44]

■ The district court's findings pertaining to the quantity of wet sugar, the effect of seawater on raw sugar, and the propriety of relying on hand samples instead of an automatic sampler are amply supported by the record. Consequently, they cannot be disturbed on appeal.[45] Furthermore, we find no error of law in the district court's application of the "market value" method of computing damages. This measure conforms to the practices of the sugar industry and to generally accepted principles for assessing damages against a carrier.[46]

The judgment of the district court is affirmed.

---

**44.** 472 F.Supp. 1289 (D.Md.1979).

**45.** *McAllister v. United States*, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Fed.R.Civ.P. 52(a).

**46.** *See The ANSALDO SAN GIORGIO I v. Rheinstrom Brothers Co.*, 294 U.S. 494, 496, 55 S.Ct. 483, 484, 79 L.Ed. 1016 (1935).