In re the **ISSUANCE OF WARRANTS BY CLERKS Pursuant to Title 18 United States Code § 1955(d) and Title 21 United States Code § 881(b).**

No. MISC 870–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Nov. 7, 1986.

Charles E. Lyons, Asst. U.S. Atty., Charlotte, N.C., Clifford C. Marshall, Asst. U.S. Atty., Asheville, N.C.

## ORDER

Before POTTER, Chief Judge, and SENTELLE and McMILLAN, District Judges.

THIS MATTER is before the Court on the Government's Motion to reconsider the Order of this Court dated October 16, 1986 and filed October 17, 1986, directing parties seeking warrants by non-judicial officers in forfeiture actions pursuant to Title 18, Section 1955(d) and Title 21, Section 881(b) of the United States Code to file appropriate Motions and directing the Clerk to refer the Motions to the United States Magistrate or to a judge.

Title 18, § 1955(d) provides that any property, including money, used in violation of the provisions of this Section may be seized and forfeited to the United States. That statute pertains to an "illegal gambling business." Title 21, § 881 has to do with forfeiture of controlled substances, raw materials and equipment, and conveyances and other property used in connection with a violation of Subchapter 1 of Chapter 13 of Title 21. Section 881(b) provides for seizure upon process issued pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims by any District Court of the United States having jurisdiction over the property. Rule C of the Supplemental Rules provides for the bringing of an action *in rem* by a verified complaint describing the property. Rule C(3) provides:

> *Except in actions by the United States for federal statutory violations,* (emphasis added) the verified complaint and any supporting papers shall be reviewed by the Court.... In actions by the United

States for forfeiture for federal statutory violation, the Clerk, upon filing of the complaint, shall forthwith issue a summons and warrant for the arrest of the vessel or other property without requiring a certification of exigent circumstances.

This Court's Order, filed October 17, 1986, was improvidently issued without allowing the United States an opportunity to be heard, and the Court agrees with the Government that it was an abuse of discretion. Further, any rule of this District Court should be voted upon by a majority of the active judges. Only two of the three active judges signed the Order filed October 17, 1986, and the majority of the active judges have determined that the Government's Motion to reconsider its Order should be *ALLOWED* and the majority of the active judges have determined that the Order should be *VACATED.*

IT IS SO ORDERED this the 31st day of October, 1986.

McMILLAN, District Judge, dissenting.

Since I have given this subject considerable study over a period of many days and many hours, and have become acquainted with the law, including the constitutional aspects of these questions (*see* 26–page "MEMORANDUM OF DECISION" filed October 31, 1986, and "SUPPLEMENTAL FINDINGS OF FACT ON THE QUESTION OF THE CLAIMED NEED FOR HASTE AS A REASON FOR SEIZING PROPERTY WITHOUT NOTICE OR HEARING" filed November 4, 1986, in cases numbers C–C–86–353–M, C–C–86–368–M, C–C–86–369–M, C–C–86–370–M, C–C–86–371–M, C–C–86–376–M, C–C–86–377–M, C–C–86–378–M and C–C–86–390–M, attached), I find myself unable to agree with the order, proposed on October 31, 1986, by Judge Potter, and acquiesced in by Judge Sentelle, which would cancel the original order of October 16, 1986.

Therefore, I respectfully DISSENT.

## APPENDIX

In the District Court of the United States For the Western District of North Carolina Charlotte Division

Filed Oct. 31, 1986

C–C–86–353–M United States of America, Plaintiff,

v.

Life Insurance Company of Virginia Single Premium Whole Life Policy, Policy Number 002138373, Defendant.

C–C–86–368–M United States of America, Plaintiff,

v.

Centrust Savings Bank Money Market Savings Account, Account Number 01–020779–6 and Passbook for Account Number 01–020779–6, Defendants.

C–C–86–369–M United States of America, Plaintiff,

v.

$10,000.00 U.S. Currency and Bearer Paper, Defendants.

C–C–86–370–M United States of America, Plaintiff,

v.

Financial Federal Regular Savings Account, Account Number 09–15164–2–06, and Passbook for Account Number 09–15164–2–06, Defendants.

C–C–86–371–M United States of America, Plaintiff,

v.

First Union National Bank of Florida Money Market Savings Account, Account Number 55200004961, Defendant.

C–C–86–376–M United States of America, Plaintiff,

v.

.179 Acre of Land, More or Less, in Mecklenburg County, North Carolina, et al., Defendants.

C–C–86–377–M United States of America, Plaintiff,

v.

.161 Acre of Land, More or Less, in Mecklenburg County, North Carolina, Defendant.

C–C–86–378–M United States of
America, Plaintiff,

v.

.581 Acre of Land, More or Less, in
Mecklenburg County, et al.,
Defendant.

C–C–86–390–M United States of
America, Plaintiff,

v.

B & M Used Cars, A Partnership, Account
No. 24403, Including All Inventory and
Real and Personal Property, Defendant.

MEMORANDUM OF DECISION

### TABLE OF CONTENTS

|  | Page No. |
|---|---|
| SUMMARY | 1184 |
| THE FUNDAMENTAL LAW | 1185 |
| HISTORY OF PROCEEDINGS | 1185 |
| THE INDIVIDUAL CASES | 1186 |
| C–C–86–390–M—B & M Used Cars | 1186 |
| C–C–86–353–M—Life Insurance Company of Virginia Policy | 1186 |
| C–C–86–368–M—Centrust Savings Account and Passbook | 1187 |
| C–C–86–369–M—Seized Currency | 1187 |
| C–C–86–370–M—Financial Savings Account and Regular Passbook | 1188 |
| C–C–86–371–M—First Union National Bank of Florida Money Market Savings Account | 1188 |
| C–C–86–376–M—.179 Acre of Land | 1188 |
| C–C–86–377–M—.161 Acre of Land | 1189 |
| C–C–86–378–M—.581 Acre of Land | 1189 |
| LEGAL DISCUSSION | 1189 |
| CONCLUSION | 1193 |

## SUMMARY

These suits were instituted by the United States Attorney for the Western District of North Carolina, in the United District Court in Charlotte, North Carolina, by the filing of a summons and a "COMPLAINT FOR FORFEITURE IN REM." Defendants resist the forfeitures and seizures, asserting that the forfeitures and seizures are invalid under the Fourth Amendment to the United States Constitution and that they are not authorized by any pertinent statutes.

For reasons set out below, this court is of the opinion and finds that the forfeitures are invalid; that the seized property should be returned to the respondents; and that the United States, if the statutes and decisions permit, pay the costs and attorneys' fees of the respondents-claimants.

## THE FUNDAMENTAL LAW

The Fourth Amendment to the United States Constitution reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fifth Amendment to the United States Constitution reads as follows:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

## HISTORY OF PROCEEDINGS

This order deals with eight separate cases.

On October 1, 1986, the United States Attorney filed motions in two of those cases, *"United States of America v. Centrust Savings Bank Money Market Savings Account, Account Number 01–020779–6 and Passbook for Account Number 01–020779–6,"* C–C–86–368–M, and *"United States of America v. $10,000.00, U.S. Currency and Bearer Paper,"* C–C–86–369–M, requesting an order directing various parties to comply with warrants for seizure of property which had been issued by deputy clerks of this court.

On October 7, 1986, the custodian for the defendant used car business in *"United States of America vs. B & M Used Cars, a partnership, Account No. 24403, including all inventory and real and personal property,"* C–C–86–390–M, filed a report detailing his fears that a substantial diminution of the assets of the business as well as damage to third party purchasers of cars from the business was likely unless the court acted soon.

On October 14, 1986, one of the claimants in *"United States of America v. .581 Acre of Land, more or less in Mecklenburg County, North Carolina et al.,"* C–C–86–378–M, filed a motion to dismiss pursuant to Rule 12(b) of the *Fed.R.Civ.P.*

Upon review of the files in those four cases, the court discovered that in each case deputy clerks appeared to have issued warrants for the arrest of property *ex parte,* with no notice to persons with interests in the property, and no opportunity for them to be heard, upon conclusory allegations based solely on alleged "information and belief" of the Assistant United States Attorney, and with no finding of probable cause and no finding of "exigent circumstances."

A review was then made of the other five captioned forfeiture cases recently filed and pending before the court. It was discovered that they appeared to contain the same infirmities.

Since property continued to be held pursuant to this court's authority, it appeared incumbent upon the court to determine whether its authority was being exercised properly. Accordingly, the court scheduled the entire group of cases for a hearing on October 30, 1986.

That hearing was held as scheduled.

At the hearing, in response to inquiry by the Court, the United States Attorney advised that he has no evidence to offer in support of these orders of seizure except the allegations upon information and belief in the complaints. He also advised that no evidence in support of the seizures other than the complaints were offered to the clerk at the time the orders were sought and obtained. From this, it is apparent that the United States has relied solely upon unspecified "information and belief"

and has made no efforts in these cases to demonstrate "exigent circumstances" to justify the *ex parte* action. It is also obvious that no evidence other than the complaints was offered to the clerk of court to support a finding of probable cause to issue the warrants.

The parties with interests in the property involved in these cases include Cameron Brown Company, three Florida banks, Life Insurance Company of Virginia, a construction company, a used car dealership and nine different individuals.

Only one of these parties has been convicted of a crime.

## THE INDIVIDUAL CASES

In case number C–C–86–390–M, "*United States of America vs. B & M Used Cars, a partnership, Account No. 24403, including all inventory and real and personal property,*" the United States Attorney alleged jurisdiction under Title 28, U.S.C., Sections 1345, 1355, 1356 and 1395; Title 21 U.S.C., Section 881; and under the Supplemental Rules of Certain Admiralty and Maritime Claims, Title 28, United States Code, Appendix. He alleged that the defendant was a used car dealership owned by Michael Aaron Little and William Bryan Cook; that Little and Cook had purchased some used cars to start their business; that Little pleaded guilty on April 11, 1986, to a charge of possession with intent to distribute cocaine, in violation of Title 21, U.S.C., Section 841(a)(1), and received a sentence of ten years' imprisonment plus other penalties. The complaint alleges:

"6. The *United States* is informed and believes that the funds used by Michael Little and William Cook to purchase the above-described vehicles were furnished or intended to be furnished in exchange for controlled substances in violation of Title 21, United States Code, Section 801, *et seq.*" [Emphasis added.]

The complaint was verified by Charles E. Lyons, Assistant United States Attorney, in the following style:

"Charles E. Lyons, being first duly sworn, deposes and says:

"That he is the attorney for the United States in the foregoing action, that he has read the foregoing Complaint and knows the contents thereof, that the same is true according to his own knowledge, *except as to matters and things therein stated upon information and belief,* and as to those matters and things, he believes them to be true." [Emphasis added.]

The complaint was verified on August 22, 1986, before Sharon Rexroad, Deputy Clerk (not a Magistrate) of the United States District Court for the Western District of North Carolina.

On the same day, and based upon no evidence whatever other than the verification "upon information and belief" by the United States Attorney, Deputy Clerk Rexroad then issued a "WARRANT FOR ARREST IN REM" directing the Marshal to seize the property.

The Marshal did seize numerous automobiles and other property. A custodian, Craig Whitley, was later appointed and was authorized by order of Judge Robert D. Potter, Chief Judge of this court, to collect the assets of the used car business. The problems which this created are described at length in the October 7, 1986, report, fourteen pages long, of Craig Whitley, Custodian, and in the addendum to that report filed on October 17, 1986.

Michael Aaron Little on April 11, 1986, pleaded guilty of drug offenses and is serving a ten-year prison term at Camp Butner prison.

William Bryan Cook, his partner, has been neither indicted nor convicted of any crime.

Cook also says that he put up the money for the used car dealership and that none of that money was furnished or intended to be used in exchange for controlled substances. Cook requests that the assets of the car business be returned to him. He also seeks attorneys' fees.

In case number C–C–86–353–M, "*United States of America v. Life Insurance Company of Virginia Single Premium Whole Life Policy, Policy Number 002138383,*"

The United States Attorney's complaint alleges that the Life Insurance Company of Virginia had issued a life insurance policy covering the life of Helen Hepburn; that the prime beneficiary was Gene Ellis Williams; that the policy is a single premium whole life policy, providing $280,821.00 of life insurance; and that the single premium of $62,265.85 was paid to the insurance company by Gene Ellis Williams on March 17, 1986.

Paragraph 5 of the complaint alleges:

"5. The *United States* is informed and believes that the funds used by Gene Ellis Williams to purchase the above-described insurance policy were furnished or intended to be furnished in exchange for controlled substances in violation of Title 21, United States Code, Section 801, *et seq.*, and as such, the defendant insurance policy is a proceed traceable to exchanges of controlled substances in violation of said title and is therefore subject to seizure and forfeiture under the provisions of Title 21, United States Code, Section 881(a)(6)." [Emphasis added.]

The complaint also alleges that Williams and Hepburn have been indicted by the Grand Jury of this district for violations of Title 21, U.S.C., Section 801, *et seq.*

The verification, again by Mr. Lyons, was, as to the material facts, on "information and belief" only.

As of this writing, no adverse claim to the policy has been filed, and the court is not informed as to whether the warrant has been executed.

In case number C–C–86–368–M, "*United States of America vs. Centrust Savings Bank Money Market Savings Account, Account Number 01–020779-6, and Passbook for Account Number 01–020779-6,*" the object of the requested forfeiture is a savings account in the name of Gene Ellis Williams as trustee for his sister, Mrs. Ernestine W. Byrd. The passbook for the savings account is alleged to be in the custody of the Charlotte–Mecklenburg Police Department, which is within the jurisdiction of this court, and the funds are alleged to be in the Centrust Savings Bank in Miami, Florida, account number 01–020779-6. Paragraph 5 of the complaint reads as follows:

"The *United States* is informed and believes that the funds contained in the above-described Money Market Savings Account were furnished or intended to be furnished in exchange for controlled substances in violation of Title 21, United States Code, Section 801, *et seq.*, and as such, the funds contained in the defendant Money Market Savings Account are proceeds traceable to exchanges of controlled substances in violation of said title and is therefore subject to seizure and forfeiture under the provisions of Title 21, United States Code, Section 881(a)(6)." [Emphasis added.]

The verification, again by Mr. Lyons, was, as to the material facts, on "information and belief" only.

Centrust Savings Bank, answering, admitted custody of the savings account, which has a present balance of $27,997.73.

The passbook was "arrested" by the Marshal and is retained by him. His return shows that the Centrust Savings Bank in Miami did not interpret the warrant as requiring that Centrust should deliver the money to the Marshal. However, on October 22, 1986, Centrust delivered the money to the Marshal.

In case number 86–369–M, "*United States of America v. $10,000.00, U.S. Currency and Bearer Paper,*" the complaint alleges that Gene Williams has been indicted for drug law violations. Paragraphs 4, 5 and 6 of the complaint read as follows:

"4. The United States is informed and believes that on or about January 17, 1986, Gene Williams paid Nelly Glass and Construction Company, 7840 N.W. 57 Street, Miami, Florida 33166, $10,000.00 as down payment for the purchase of twenty shares of Nelly Glass and Construction Company stock. This transaction is evidenced by a bearer paper on Nelly Glass and Construction Company stationery upon which is affixed said Company's corporate seal.

"5. The United States is informed and believes that the $10,000.00 used by Gene

Williams to pay for the above-described down payment for stock was furnished or intended to be furnished in exchange for controlled substances in violation of Title 21, United States Code, Section 801, *et seq.*, and as such, the defendant $10,000.00 is a proceed traceable to exchanges of controlled substances in violation of said title and is therefore subject to seizure and forfeiture under the provisions of Title 21, United States Code, Section 881(a)(6).

"6. The bearer paper is in the custody of the Charlotte–Mecklenburg Police Department within the jurisdiction of this Court, and the $10,000.00 is in the possession of Nelly Glass and Construction Company."

The verification, again by Mr. Lyons, was, as to the material facts, on "information and belief" only.

Nelly Glass and Construction Company filed a response denying the government's claim and asserting what amounts to a counterclaim for $7,383.90. The complaint does not, even on information and belief, allege any basis for a forfeiture against Nelly Glass and Construction Company. Nelly Glass and Construction Company is a seller for value.

Case Number C–C–86–370–M, *"United States of America v. Financial Federal Regular Savings Account, Account Number 09–15164–2–06 and Passbook for Account Number 09–15164–2–06,"* is a complaint seeking forfeiture of a savings account in the name of Willie Williams, in trust for Gene Williams. The account is alleged to be in Financial Federal Savings and Loan Association of Miami, Florida. Service of the complaint was made by certified mail addressed to (1) Bart Menser, Williams' attorney; (2) Mr. A. Taylor, a bank officer; and (3) a police officer, Mike Holt. Willie Williams, in whose name the account stands, has not been served.

On September 9, 1986, the Deputy Marshal presented a warrant to the bank and the bank delivered the funds, $949.46, to the Marshal.

Paragraph 5 of the complaint reads:

"5. The *United States* is informed and believes that the funds contained in the above-described Regular Savings Account were furnished or intended to be furnished in exchange for controlled substances in violation of Title 21, United States Code, Section 801, *et seq.*, and as such, the funds contained in the defendant Regular Savings Account are proceeds traceable to exchanges of controlled substances in violation of said title and is therefore subject to seizure and forfeiture under the provisions of Title 21, United States Code, Section 881(a)(6)." [Emphasis added.]

The verification, again by Mr. Lyons, was, as to the material facts, on "information and belief" only.

In case number C–C–86–371–M, *"United States of America vs. First Union National Bank of Florida Money Market Savings Account, Account Number 55200004961,"* the United States Attorney filed the complaint on August 7, 1986, claiming forfeiture of a savings account in the name of Ernestine W. Byrd, trustee for Gene Williams. This is a money market savings account with First Union National Bank of Florida, in West Hollywood, Florida. The key allegation of the complaint, again upon information and belief only, of the United States Attorney reads as follows:

"5. The United States is informed and believes that the funds contained in the above-described Money Market Savings Account were furnished or intended to be furnished in exchange for controlled substances in violation of Title 21, United States Code, Section 801, *et seq.,....*"

The warrant was served upon the bank and others, and the account was seized. The return does not specify how much money was seized on June 17, 1986. No formal response has been made.

Case number C–C–86–376–M, *"United States of America vs. .179 Acre of Land, more or less, in Mecklenburg County, North Carolina, et al.,"* appears generally similar to the others. It is a claim against a .179 acre tract of land on Merriman Avenue in Charlotte (apparently a house and

lot) jointly owned by Walter Martin Johnson and wife, Susie Johnson. This claim was settled before the hearing for a consideration of $500.00.

Case number C–C–86–377–M, *"United States of America v. .161 Acre of Land, more or less in Mecklenburg County, North Carolina, et al.,"* was a claim for forfeiture of a .161 acre tract of land in Mecklenburg County owned by Robert Cannon and Bobbie Cannon. Again, the key allegations are upon information and belief only. Bobbie Cannon filed answer, denying all material allegations. The case was dismissed by stipulation upon payment of $200.00 by Bobbie Cannon, and is no longer pending.

In case number C–C–86–378–M, *"United States of America v. .581 Acre of Land, more or less in Mecklenburg County, North Carolina et al.,"* the complaint alleges that this property (680 Pin Oak Court in Pineville, North Carolina), owned by John R. Nichols and his wife, Barbara, should be forfeited because Barbara Nichols has been indicted for violation of Title 18, United States Code, Section 1955(d) (a gambling statute). The essential allegation is:

"7. The United States is informed and believes that defendant was used in violation of Title 18, United States Code, Section 1955, and as such, defendant is therefore subject to seizure and forfeiture under the provisions of Title 18, United States Code, Section 1955(d)."

Again, this allegation is based purely upon the "information and belief" of the Assistant United States Attorney.

Barbara and John Nichols have answered the complaint, reporting that the bank has a lien for $67,000.00 and that the price they paid for the land was $78,000.00. Cameron Brown, mortgage banker, asserts its rights under its first deed of trust in the amount of $66,847.95.

The respondents, by separate memorandum of law, have asserted that real property is not subject to forfeiture under 18 U.S.C. § 1955(d), and is not included in the phrase "any property" in Section 1955(d). They cite apparently relevant authority.

In addition, respondents say that the property held by husband and wife together is held by "entireties," and that a forfeiture against the innocent spouse would apparently not be valid.

## LEGAL DISCUSSION

Section 881(b) of Title 21 of the United States Code (Food and Drugs) provides as follows:

Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property ...

Rule C. the section of the Supplemental Rules for Certain

Admiralty and Maritime Claims pertaining to actions for *in rem* forfeiture actions states:

In actions by the United States for forfeitures for federal statutory violations, the clerk, upon filing of the complaint, shall forthwith issue a summons and warrant for the arrest of the vessel or other property without requiring a certificate of exigent circumstances.

Title 18 of the United States Code, Section 1955, prohibits illegal gambling businesses. This statute contains a forfeiture provision that states:

"(d) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial forfeiture procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws; the disposition of such vessels, vehicles, merchandise, and baggage or the proceeds from such sale; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred or alleged to have been incurred under the

provisions of this section, insofar as applicable and not inconsistent with such provisions. Such duties as are imposed upon the collector of customs or any other person in respect to the seizure and forfeiture of vessels, vehicles, merchandise, and baggage under the customs laws shall be performed with respect to seizures and forfeitures of property used or intended for use in violation of this section by such officers, agents, or other persons as may be designated for that purpose by the Attorney General.

18 U.S.C. § 1955(d).

The position of the United States is that Admiralty Rule C applies in gambling forfeiture cases. Unlike the drug forfeiture statute, Section 1955(d) does not refer to the Admiralty Rules. It refers only to the Customs Laws; the Customs Laws do *not* provide that deputy clerks can issue warrants upon the filing of a complaint. There is no statutory authority for a deputy clerk issuing a warrant in gambling forfeiture cases. However, even if there were such authority, the procedure would be unconstitutional.

In those cases which seek to impound property alleged to be related to illegal drug traffic, the government seized claimants' properties after obtaining warrants pursuant to the supplemental maritime rules. The complaints upon which the Attorney General obtained these warrants did not recite even basic facts which would enable a dispassionate observer to conclude objectively that the property may be subject to forfeiture. This is a defect of constitutional proportions which invalidates the seizure process *ab initio.*

Rule C, which contemplates that judgments as to the sufficiency of complaints will be made by clerks without legal training or experience, provides an open invitation to abuse in the context of forfeiture proceedings. The difficulties which are presented in these cases are not unusual, but typical in a procedure providing for no genuine impartial check before a person's property is taken from him.

The Supreme Court's decisions in *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), have set out the criteria for a constitutional seizure of property under the due process clause of the Fifth Amendment. Although effective prior notice to property owners or persons having interests in the property to be seized is always desired, the court recognized that this was not always a practical possibility. *Mitchell v. W.T. Grant Co., supra,* 416 U.S. at 624-25, 94 S.Ct. at 1908-09. The court made clear, however, that a minimum, in addition to the necessity of specific and particular allegations in the complaint supported by verified affidavits and the posting of an adequate bond to cover any loss, the authority under which the seizure is ordered must be that of a neutral and detached *judicial* officer. *Mitchell v. W.T. Grant Co., Id.* 416 U.S. at 625, 94 S.Ct. at 1908; *North Georgia Finishing, Inc. v. Di–Chem, Inc., supra* 419 U.S. at 607, 95 S.Ct. at 722.

Rule C, on its face, does not permit such an inquiry. As such, it must fall to the constitutional requirements of due process.

There are exceptional circumstances, of course, when immediate seizure of property interests without an opportunity for a prior hearing is constitutionally permissible.

There are "extraordinary situations" that justify postponing notice and opportunity for a hearing. *Boddie v. Connecticut,* 401 U.S., [371] at 379 [91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)]. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating

the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Fuentes v. Shevin, supra* 407 U.S. at 91, 92 S.Ct. at 1999.

The leading Supreme Court decision on "exigent circumstances" is *Calero–Toledo, et al. v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), decided two days after *Mitchell.* A leased yacht in the hands of the lessee was discovered by the authorities to contain marihuana, and was seized. No prior notice of the seizure was given to the lessor and no prior adversary hearing was conducted. The lessor challenged the constitutionality of the seizure as applied to him. The Supreme Court upheld the constitutionality of the seizure applying the three-part *Fuentes* test finding that:

(1) There was a significant governmental interest to prevent the continued illicit use of the property and to enforce criminal sanctions;

(2) Prompt action was necessary because the yacht could easily be removed from the jurisdiction; *and*

(3) The state maintained control over the proceedings—that is, it was not conducted by self-interested private parties.

The *Calero–Toledo* case differs from the cases before this court in that in *Calero–Toledo,* the yacht was *used* for the illicit purposes, it was in the possession of the authorities before any judicial action was required, *and it was easily removable from the jurisdiction.* There were clearly "exigent circumstances."

There is another line of exceptions to the *Sniadach–Fuentes* doctrine, that can be called "health cases." These are cases in which the Food and Drug Administration or similar government agencies seize mislabeled, dangerous or defective products to protect the public. The leading Supreme Court case is *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950), involving the seizure of mislabeled medicine. The Fourth Circuit recently relied upon *Ewing* to uphold the constitutionality of a seizure of children's sleepwear which had been treated with a toxic chemical. *United States of America v. Articles of Hazardous Substances, etc.,* 588 F.2d 39 (4th Cir.1978). However, the danger to the health of the public that underlies the "health" cases makes it distinguishable from the forfeitures of personal and real property involved in the cases before this court.

There are contexts, of course, in which the application of Rule C may be constitutional. *Amstar Corp. v. S/S Alexandros T.,* 664 F.2d 904 (4th Cir.1981). In *Amstar* the Fourth Circuit held that Rule C, insofar as it dealt with *in rem* proceedings against a *vessel,* was constitutional. *Id.* at 907. Judge Butzner expressly distinguished maritime actions *in rem* from forfeiture cases brought by the sovereign to vindicate its penal laws. *Id.* at 909. "These principles were developed to meet the special needs of persons engaged in many aspects of maritime commerce." *Id.* at 909. "Notice prior to arrest would in many instances enable the owner to frustrate judicial enforcement of the lien simply by ordering the master to put out to sea." *Id* at 911.

However, even in this maritime context Judge Butzner recognized that "Conforming the rule to some or all of the requirements of the cases dealing with the constitutionality of common law seizures may be a salutary reform." *Id* at 910. Other courts went further, holding Rule C unconstitutional even in maritime contexts. *Alyeska Pipeline Service Company v. Bay Ridge,* 509 F.Supp. 1115 (D.Ala.1981); *Karl Senner, Inc. v. The M/V Acadian Valor,* 485 F.Supp. 287 (E.D.La.1980); *cf. Morse, The Conflict between the Supreme Court Admiralty Rules and Sniadach Fuentes: A Collision Course?* 3 Fla.S.U.L.Rev. 1 (1975), 7A *Moore's Federal Practice* E.10 (2d Ed.1983).

In 1985, Congress responded to these constitutional concerns by amending Rule C in admiralty cases to provide for *judicial* authorization of the issuance of warrants in the absence of exigent circumstances; and for prompt post-seizure hearings following attachment and arrest. *Cf.* 7A

*Moore's Federal Practice* E.10 (1985–1986 Supp.).

However, Congress appears to have neglected or overlooked amendment of Rule C in federal forfeiture cases.

*United States v. Certain Property Located at 4880 S.E. Dixie Highway,* 628 F.Supp. 1467 (S.D.Fla.1986), is apparently the only Fifth Amendment case directly dealing with the question of forfeitures under the drug statute, 21 U.S.C. § 881, and with the constitutionality of Rule C, in that context. The United States Attorney served a clerk's warrant on the owner of a motel, a boat company, and a restaurant. The complaint made only the conclusory allegation that "based on reports and information furnished to [the United States Attorney] from the Federal Bureau of Investigation, the real property is subject to forfeiture to the United States of America" pursuant to 21 U.S.C. § 881(a)(6).

The deputy clerk rubber stamped the name of the judge to the warrant and affixed the court's seal to each warrant. The next day, upon the strength of the clerk's warrant, the owners and operators of the resort were ejected. As the guests left the premises they were searched to make sure they did not abscond with resort property.

Judge Gonzalez, the trial judge, held the search unlawful. He distinguished the *Pearson Yacht* case because it had presented exigent circumstances (the danger of removal of the yacht from the jurisdiction), and he also distinguished the "health" cases which were cited to him by the United States Attorney. He held that under the *Sniadach–Fuentes* line of cases, procedure under Rule C, in the drug forfeiture context, was unconstitutional:

> ... [T]he Fifth Amendment minimally requires that no warrant should issue unless and until a judicial officer has reviewed the complaint in an *ex parte* proceeding and has concluded that said complaint sets forth a reasonable basis for believing that the property is subject to forfeiture under section 881(b).

Judge Gonzalez's reasoning is persuasive. An appearance before a magistrate presents little burden on the government and affords effective insurance that property will not be seized on false assertion, rumor, innuendo, or mere speculation.

The United States noted an appeal of *Dixie Highway* to the Eleventh Circuit Court of Appeals, and then abandoned the appeal. 628 F.Supp. 1467 at 1469 (1986).

The Fourth Amendment's prohibition of "unreasonable searches and seizures" applies to forfeiture proceedings that are quasi-criminal and punitive in nature. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). The drug forfeiture statute, 21 U.S.C. § 881(b), is a punitive and quasi-criminal statute. *United States v. Pappas,* 613 F.2d 324 (1st Cir.1980); *Application of Kingsley,* 614 F.Supp. 219 (D.Mass.1985), *aff'd.,* 802 F.2d 571 (1st Cir.1986); *United States v. $128,035.00 in U.S. Currency,* 628 F.Supp. 668 (S.D.Ohio 1986). Although there are no cases, to this court's knowledge, on the nature of the gambling forfeiture statute, 18 U.S.C. § 1955(d), this court finds that it, too, is a punitive and quasi-criminal statute.

The Warrants clause of the Fourth Amendment requires that, prior to the issuance of a warrant, a detached judicial officer must determine whether probable cause exists. *Jones v. United States,* 362 U.S. 257, 270–71, 80 S.Ct. 725, 735–36, 4 L.Ed.2d 697 (1960); *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); *Spinelli v. United States,* 393 U.S. 410, 415, 89 S.Ct. 584, 588, 21 L.Ed.2d 637 (1969).

Section 881(b) of the *drug* forfeiture statute, by reference to Admiralty Rule C, authorizes the clerk of court to issue a warrant solely on the basis of the filing of a verified complaint by the United States Attorney. The statute does not require a *determination* by a qualified judicial officer of whether there is *probable cause* for the belief that the property in question is subject to forfeiture. The *gambling* forfeiture statute, by contrast, does not authorize a deputy clerk to sign a warrant for arrest *in rem.* However, in the gambling forfeiture cases before this court, a deputy clerk *did* sign the warrants for arrest *in rem,* without any prior determination of probable cause.

Two courts have considered whether the procedure authorized by Section 881 violates the Warrants clause of the Fourth Amendment. Both courts found that without a determination of probable cause by a qualified judicial officer, Section 881(b) violates the Warrants clause of the Fourth Amendment. *Application of Kingsley, supra; United States v. $128,035.00 in U.S. Currency, supra.* This court agrees. At a minimum, the Fourth Amendment requires that the United States Attorney secure an *in rem* warrant from a magistrate or a district court judge who has made a probable cause determination.

A person who is not law trained is ordinarily not competent to make a probable cause determination that the property in question is subject to seizure and forfeiture under either Section 881(b) or 1955(d). The cases before this court demonstrate the danger involved. A deputy clerk signed warrants for arrest *in rem* on the basis of conclusory complaints that merely stated that the United States was "informed and believed" that the property was subject to seizure. I believe the Fourth Amendment requires more from the prosecution.

For an illustration of how easy it is to follow the law, see the opinion of Judge Aspen in *United States v. A Parcel of Real Property*, 636 F.Supp. 142 (N.D.Ill.1986).

### CONCLUSION

The seizures were unlawful. It appears that claimants are entitled to recover their property, plus costs and attorneys' fees.

Claimants are requested to tender appropriate orders and petitions.

(s) James B. McMillan
James B. McMillan
United States District Judge

SUPPLEMENTAL FINDINGS OF FACT ON THE QUESTION OF THE CLAIMED NEED FOR HASTE AS A REASON FOR SEIZING PROPERTY WITHOUT NOTICE OR HEARING

Filed Nov. 4, 1986

This is an addendum to the court's order filed October 31, 1986.

Gene Ellis Williams is alleged to be a drug dealer involved in cases numbers C–C–86–353–M, C–C–86–368–M, C–C–86–369–M, C–C–86–370–M and C–C–86–371–M. Williams had been indicted by the Grand Jury before the first of those suits was filed. Suit number C–C–86–353–M was served upon Williams on August 1, 1986. The next four suits against Williams were not filed until seven days later, on August 8, 1986. If Williams had been able or had intended to take evasive action with regard to any of these cases, he had seven days to do it. The claimants themselves are not alleged to be people who would unlawfully hide property from the law. If the District Attorney feared that the property would be dissipated or hidden, it is strange that he should have waited seven days after sounding the alarm by filing the first suit before he filed the next batch of suits (four) involving Williams' transactions.

The United States Attorney could have given notice to the life insurance company in C–C–86–353–M, by simply delivering a copy of the suit papers. There is no evidence that it would have done anything about the policy without appropriate court order in the face of such a notice.

In Centrust Savings (case number C–C–86–368–M), the same observations apply. Moreover, the local police had the passbook, and the money market savings funds themselves were safe in the possession of the bank and the bank could have been notified of the government's claim any time between August 1 and August 8, 1986.

The documents ("bearer paper") alleged to evidence the claimed money in case number C–C–86–369–M were in the hands of the Charlotte–Mecklenburg Police Department. The passbook for the savings account in case number C–C–86–370–M was in the hands of the Charlotte–Mecklenburg police and the money was in the hands of the Florida bank. The money which was seized in case number C–C–86–371–M had been in the hands of the United States Marshal since *June* 17, 1986 (see Marshal's return, docket number 5).

The used cars, several dozen of them, and the other equipment and personal property taken from B & M Used Cars in case number C–C–86–390–M are movable items, but again there was no demonstrated exigency. Michael Aaron Little, one of the two operators of that used car dealership, had been convicted more than four months before this suit was filed, and had been sentenced to ten years in prison back in April, 1986. If William Bryan Cook, the person operating the lot at the time this suit was filed, had been worried about government seizure, he had more than four months since April of 1986 in which to take that evasive action.

As to the three land cases (C–C–86–376–M, C–C–86–377–M and C–C–86–378–M), North Carolina has a *lis pendens* statute (N.C.Gen.Stat. §§ 1–116 to 1–120) under which the land could easily and rapidly have been encumbered. Moreover, there is no evidence that any parcel of the land was capable of being removed from its location, or in any way damaged by the passage of a few hours during which a due process notice of hearing could have been given.

There is, therefore, not merely an election by the United States to avoid trying to prove a constitutional basis for these seizures; the record affirmatively shows that there was not, in fact, any kind of "exigency" or need for haste to support this wholesale bypass of constitutional requirements.

(s) James B. McMillan
James B. McMillan
United States District
Judge